Case number 24-5072, National Council of Agricultural Employers Appellants v. United States Department of Labor et al. Mr. Dorey for the Appellants, Mr. Winnick for the Appellees. Good morning. We will hear argument in the first case and then take a brief recess to reconstitute the panel. Mr. Dorey. Good morning and may it please the court. I represent the National Council of Agricultural Employers. NCAA is an association that in turn represents the farmers and ranchers across this country. NCAA's members are the users of the H-2A program. It in fact now represents approximately 95% of employer H-2A users. The program allows for farmer and rancher employers to bring agricultural workers to this country on a temporary basis. Without a functional H-2A program, the food supply in this country would greatly suffer and compromise national security. For a variety of reasons, the H-2A program is heavily regulated by the federal government, including by the United States Department of Labor. How exactly the Labor Department regulates the program has significant consequences for how well it functions or doesn't function. This appeal presents a tale of three H-2A program rules promulgated by the Labor Department. The first was issued in 2010 and it governed the program for more than a decade. On January 11, 2021, the outgoing Trump administration promulgated a replacement rule. A year and a half prior, it had issued a notice of proposed rulemaking. It accepted voluminous comments, including from our client. And after months of work, it finalized a rule. The record shows it's over 700 pages long. Its relevant officials signed that rule. They filed it with the Office of Federal Register for public inspection and publishing. Under 44 U.S.C. 1503, OFR was required to note on the document that was filed the day and hour of filing and make it immediately available for public inspection. But you haven't challenged the OFR regulations. We have not. The statute seems to require immediate availability for public inspection, but the regs give OFR this brief time to review the rule and format it and do the technical review before they put it out. I agree with that. And OFR didn't do that at all. For 11 days, they had this rule. I mean, we have Kennecott and Humane Society in those cases draw the line, not at agency transmission to OFR, but at OFR's making available for public inspection. I don't think those cases stand for that proposition because the question was never decided in either one. If an agency itself published the rule, put it out ahead of time. And I think that that line, if an agency promulgates itself and makes it available to the public, is much more consistent with a long line of cases from this court and other courts as well. They say if an agency makes a final choice and puts it out, those who have actual notice are bound. And our client had actual notice of it and so did its members who are the users of the program. The agency put out something that it described as a non-final rule. It had a disclaimer. It said, don't rely on this, rely on the final rule. I don't think the agency ever said it wasn't a final rule. It, in fact, said this regulation has been sent to OFR. And it might have some technical differences, some formatting differences. OFR, in fact, makes technical and formatting differences between its own public inspection. That version of the regulation may vary slightly from a published document. That's true even as between OFR public notice and OFR publication. It's also true of every submission DOL makes. It's a boilerplate. It has no significance. It's special to this case. I agree with that. So every time they submit a rule, you're saying it's final, not anymore, because they've said we've submitted it. It's final if it's not confidential. And I think that's the distinction. If it's not confidential. So to my understanding in Kennecott, there was a submission to OFR, but it was in secret. So no member of the public had knowledge what had gone on there. And so the question was not presented whether OFR public inspection is the test or the final line, as that goes. And had there been in that case public notice of the rule, then we might have a very different decision in Kennecott. I think the government has overread Kennecott now twice, once in Humane Society and again here, to stand for something it doesn't because the facts weren't present. So you're treating notice to the council and several other interest groups as public notice. It is, I think. But the public didn't get notice. The public did get notice insofar as NCAE got notice and then disseminated it to its members. I didn't get notice. I mean, if you do, I don't think you read the public inspection by federal register online either every day. Maybe you do, but members of the public generally don't do that either. But there are members of the public out there who would have many more people submitted comments than got notice. I believe in any event, members of the public are entitled to notice. They are, and I think they got it. There was a press release. There was a stakeholder call. Text was published on the website. USDA got involved in this case, as with Humane Society. Same basic setup for USDA. Are there agricultural employers who are not members of the council? There are. It's pretty limited. Did they get notice? If they read DOL's website or joined the stakeholder call or saw the press release, then they would have. That's an actual notice question. Federal register notice is the best constructive. Are you saying that OFR is not required to provide the actual notice by filing the rule for public inspection? Are you saying that we can just miss that step or skip that step? I am saying that DOL did everything it needed to do. OFR didn't follow the rules. DOL put it out itself, and I think putting it out itself is sufficient for this purpose because it provided the actual notice that's required to make things final. But isn't OFR serving essentially a gatekeeping function? In other words, if you just allow agencies to publish their rules on their websites in a press release and have a stakeholder call, what is the purpose of the Federal Register Act in terms of what Congress intended them with respect to playing their role? The purpose of the Federal Register Act is to provide constructive notice to those who don't have actual and to make a record of United States government actions for posterity that are official and final. But it doesn't mean— But if something is only on a website and it's not coming out in the Federal Register as something that's final, you know, in terms of public inspection, how do we know all of the appropriate people got notice of it if you're requiring them to go to a website to find that information out? I think it's the same thing as what OFR does, which at best is putting stuff on a website for folks to look at. So I don't see how it's different if an agency does it or if OFR does it. And I think— But how do we undo that step with the OFR requirement, you know, serving as that gatekeeping function? Because it sounds like you're making us stop short of that. But how do we undo that if that's already part of the process? I think that OFR plays a role in the process. But if you look at the APA, agency action is the test for what goes on. What does an agency do with a rule? What rules does it need to follow in respect to that? One thing about public inspection is that the agency then is limited with respect to removing the rule and amending it because that OFR process adds some finality to the rule. But if you're just allowing that agency to put it on their website, then they can undo the language on the website on its own anytime. I don't think an agency is allowed to do that. Once it says, this is the final rule, we've signed it, and they put it on their website, APA says that's closed. That's final. The administrative record is closed. I don't think an agency can play games at that time, just like an agency can't if it's sent to OFR and done. Even though it's not for the purpose of humane society, if you think about it, final insofar as it's published. It's not published in that case, but the court holds it's final for that purpose. But what law supports you that being on the website makes it final? The Administrative Procedure Act, because that's the agency action that's taken. Agency says, this is done, and here it is to the public. And that is all that is required in our view. I mean, you're advocating a practical, common sense test. The publication seems relatively public, and the rule seemed relatively final. But this seems like an area that calls out for a bright line rule. Publication by OFR after all the nits have been worked out. And everyone knows what that is, and people act accordingly. Your approach sort of makes loose, intuitive sense, but it's going to open up litigation about what kind of website publication is sufficiently formal and direct and what kind of amendments are technical versus substantive, and why would we do that? I think that the court, bright line rule sounds nice, but I'm not sure that's consistent with the APA. And I think that's reading OFR regulations and statute into the APA in a way that doesn't work. I think that it's giving OFR too much power that Congress didn't intend. They serve a largely ministerial function. They're supposed to do what agencies tell them to do. Giving them too much power sounds like a challenge to the reg that lets OFR delay making something available for public inspection. It's very difficult to challenge what OFR does in that space, I agree. I'm talking about the congressional design under the statute. It says OFR receives, OFR stamps, OFR puts on public inspection. Had they followed that rule, we wouldn't be here today because that's what DOL wanted and gave OFR 11 days to do and didn't do. All right, so tell me what's your best APA statutory site for the rule that you're advocating? I would say look at... Publication on an agency website plus transmission to OFR is legally sufficient to make the rule binding. What statute tells me that? I would look at APA 504. What makes a rule a forward-looking statement? Five or seven? So the judicial review provision, right? I would look first at the fives before I look at the sevens.  And if you give me one second, I can do better. Are they in your... They should be at the back of the first brief. Okay. So let's look at... 551. 551 to start. Here's what a rule is, an agency statement of general or particular applicability. So how can we say it's OFR statement or restatement of what an agency said? Rulemaking is the process for formulating a rule. We look at... It doesn't tell you the point at which the rule becomes final for withdrawal purposes. I think the agency makes the statement. It doesn't say here the agency only makes the statement whenever OFR says. Here's what the agency said. And I think if we read a bright line that says OFR notice is the end of the line, like we're going to run into a circumstance with the Fifth Circuit. Twice over. There's a new case out of the Fifth Circuit that says a tweet is a rule because an agency said it. Put it on the website. That's AFTR versus HHS. In this particular case, you argued also that basically a variety of subjective factors favor your position here. The direct release in the department to various people. The disclaimer, which, as I say, has been in all the cases. Some previous correspondence, I believe you cited also, in which the department itself expressed some concern or doubt about whether it was final. Is that correct? Or was it the counsel? There was an individual within NCAE who wasn't its president and CEO. The corporal aired on that point, who suggested that the incoming Biden administration might do something that was different. Of course, delay would have been the most obvious answer. These are all facts that are specific to this case. They're basically subjective. It was the understanding that the rule was final. That's what you've been arguing, right? So every case would be unique, correct? I think that's probably right. It's hard to make a bright line rule on these cases when it's so fact bound. It makes it easy to make a bright line rule. The subjective elements are simply irrelevant in a bright line rule. You have a date, and that's it. It doesn't matter what people say, what they think, what they write to each other. I think that when DOL put it on its website, did a press release, held a stakeholder briefing, that's a bright line. That's not super subjective at that point either. So if you take out the press release, you're still okay? I think so. So you don't really need the press release. It's helpful. It gives an actual notice, which is the test. And I think if we take a different line here, then we might be overruling a bunch of cases from a while ago that are criminal cases. Those are cases against parties with actual notice. Indeed. There are also cases involving the question of whether the rule was ready for, subjected to judicial review. Those all involve either criminal defendants with actual notice who went on to violate the rule or civil plaintiffs with actual notice who sought judicial review before the OFR was finished. I agree. But if our position today is a rule isn't final unless OFR puts it on public inspection, then how in the world could there be a criminal prosecution of someone for a non-final rule? Well, it could be not final for purposes of a person with actual notice, right?  And still not final with regards to the general public or in the case here with the, I mean, as long as it's not final and they can withdraw it. I don't see actually since the question here is whether they could really, whether they could withdraw the rule without further notice and comment. That's right. So no one is harmed by their withdrawal of the rule. No one's going to be criminally convicted of violating a rule that has been, that was withdrawn before it ever went to OFR. I think that the distinction I'm trying to draw is it was finalized for at least our client and its membership because our client and its membership knew they had actual notice. If your client were being prosecuted, or I guess in this case, you know, fined or something, or if you were seeking judicial review, I think you'd be, the case law would say you're correct. And we are indeed. But those are bright line rules in themselves. Actual notice provides, you know, provides a basis for prosecution or for review or appeal. Right, and there wouldn't be judicial review available of a rule that wasn't final. We couldn't even be here. Only if it becomes final. And I think an agency statement. This is sort of gun jumping. It hasn't become final, but they filed already. But that's not to anyone's prejudice. I mean, I think the government made a similar argument in Humane Society in the courts that it was like Schrodinger's cat. Is it dead or alive? I don't know until I look in the box. The government wants it both ways. I think in Humane Society gave us a determinate line. It just said, you know, there's a point beyond which. I agree. And I think this is the next logical step in the line of Humane Society, that it's not just inspection by OFR. There's nothing special about OFR. Judge Childs, anything further? Yes. I was just going to say, to the extent you're challenging the 2022 rule, what specific changes in the rule, in your view, fall outside of the scope of the 2019 NPRM and therefore are requiring this new notice and comment? Or is it a side-by-side comparison? First, I would say APA standard law is that once a record, an administrative record is closed, it can't be relied on by an agency go forward to do something else. So you've got to do a new NPRM, new notice and comment. So as a formal matter, that record was closed. It was nothing that could be done. There are significant differences between the 2021 rule and the 2022 rule that have harmed our client and its members to include choices in the 2022 rule around surety bonds and how much those are going to cost. They've made the program cost prohibitive for many members of our client. That's been a real problem. There's also issues around prevailing wage determinations, which has resulted in litigation in Washington. It's not been good. Anything else, Judge Childs? That's it. Thank you. Okay. Thank you. We'll give you two minutes. Thank you. Mr. Good morning. Good morning, Your Honor. May please the court. Daniel Winnick for the government. So this court's decision in Kennecott establishes that when agency officials sign a rule and transmitted to OFR for public notice and publication, the agency retains for some period of time the ability to withdraw the rule and later substitute a revised version without further notice and comment. The court explained in Kennecott that a document that had been signed and transmitted to OFR never became a rule subject to amendment or repeal. So I think that's the answer to the APA-based argument you were hearing this morning. The fact that it has been finalized within the agency, quote, issued by the agency, signed, sent to OFR, does not make it a rule subject to amendment or repeal because it's never become law. The court's decision in Humane Society holds that that period of flexibility ends, the point the rule passes, the point of no return. What do we make of 1503, which says upon filing, right, when the agency files with OFR, the document shall be immediately available for public inspection? So I don't think the upon filing language in 1503 actually refers to the transmission of the rule from the agency to OFR. So I'd point your honor to the last line of 1503, which distinguishes between transmission to OFR and filing. It says every agency shall cause to be transmitted for filing the document. So I think the filing to which 1503 refers is the filing by the agency. And that's sort of, you know. Sorry, I'm just trying to. Sure. Walk me through it again. So the last line of 1503 says every federal agency shall cause to be transmitted for filing. So I think the thing the agency does is transmit it. The thing OFR does is file it. And just to point to an analogy, I mean, we're all sort of, we colloquially refer to filing a brief with a court when we send it to the court through ECF. But actually the thing we're doing is transmitting it for filing. And usually it's filed right away. But if the clerk's office finds some problem with it, it's not filed. And I think it's the same thing here. The person who does the filing is OFR. Okay. But then the last sentence, that sentence is, or the sentence I quoted seems oddly tautologic. If the agency does the transmission and then OFR does the filing for public inspection, 1503 says upon filing for public inspection, the document shall be immediately available for public inspection, which is oddly circular. Yeah, I mean, the way I understand 1503 is to say the agency transmits it to OFR for filing. OFR then files it. And once it's filed with OFR, it is immediately available for public inspection. As the court said in Kennecott, this actually just doesn't speak to whether there is some period between transmission and filing. And as you heard my friend concede this morning, they haven't challenged the rigs in this case. But I do think the rigs make textual sense. There is a difference between transmission and filing. And I think the court's holding in Kennecott that it's reasonable for OFR to have this period of confidential processing between transmission and filing remains sensible. In any event, immediately truly is subject to circumstances that disrupt the operation of the government. That's certainly true. COVID, hurricanes, a glut of work coming in the last few days of an administration. So immediately is certainly a word that has some flex in it. But I do think the sort of salient point is it is immediately available once it's filed. But nothing in the statute says that it has to be filed as soon as it comes in the door. And it's commonplace in OFR's work, as the court recognized in Kennecott, for there to be, you know, I mean, something even longer than the usual two day delay between transmission and filing. In your restatement, you lost me. On filing, at least one copy is made immediately available for public inspection. And you just said about that. The entity that does the filing is OFR. So once OFR files it, it's immediately available for public inspection. But as Kennecott recognizes, there is a lag time between the transmission of a rule to OFR and the filing of that rule by OFR. So in other words, it shall be filed with the OFR in the first sentence. It's filed by the agency. But here upon filing, in that sentence, it's filing by OFR. Yes. So I agree that there is, that there is, you can read the first sentence to suggest that the thing, the person who does the filing is the agency. But I think the last sentence makes clear that what the agency does is transmit the document for filing. And then the document is filed with OFR once OFR accepts it and makes it available. So we've got three sentences in play. Agreed. There are three sentences in play. Yeah. No, and it's, look, it's not a picture of clarity. But that's why you have the regulations, which explain how it works. And as the court held in Kennecott, they're quite reasonable. And it's true, as Rana alluded a moment ago, even in sort of ordinary times, there is some delay between OFR's receipt of a rule and when OFR can make the rule available, filed and available for public inspection. At the end of administration, you know, there's a glut of work. And with particularly long rules, at any time, you know, more time is necessary. I mean, OFR's document processing handbook says, just as a bright line rule, if it's longer than 100 pages, it's going to take longer than two days. This rule, I think the double-spaced version was 732 pages long. So it's not surprising that this took longer than the usual two days. And how do you handle emergency requests, then, with respect to what you were just stating? So the statute or the regulations do provide for emergency requests, both for emergency public inspection and for emergency publication. There's procedures laid out. There's criteria laid out. And basically, the agency, OFR, decides whether or not it's going to be able to do an emergency time frame. And what OFR said here is they just didn't have the resources available in the glut of work at the end of the administration to do that. Let me put a fourth. And then can an agency ever on its own finalize a rule through its own release, or are you suggesting that OFR filing is categorically required for legal effect? So the statute makes clear that a rule does not have legal effect against the world at large until it is filed for public inspection with OFR. That's the system Congress has chosen. So I don't think an agency can do that on its own. Now, of course, an agency can ask for immediate publication. And if the president wanted, he could tell OFR to make certain that all rules submitted by agencies in the last days of his administration are made very quickly available for public inspection. But the agency cannot on its own do it by posting it on the website. And how did you all ensure, just one, I'm sorry, ensure that these, the DOL ensure that each of the provisions that issue here, for example, the wage service standards, bond requirements, appeal process, were actually a logical outgrowth of the 2019 NPRM? So plaintiff has not disputed that anything in this rule is a logical outgrowth of the 2019 NPRM. Basically, what happened is you had the 2019 NPRM, then you had the January 2021 draft final rule, which, you know, has always adopted some of the NPRM and some not. And then the 2022 final rule basically agreed with the 2021 draft rule on certain points and not on others. But they haven't, plaintiff hasn't disputed that anything that happened here was a logical outgrowth of the NPRM. There was no discomment on all of it. Just back to filing versus transmission for a minute. Yes. The first sentence of 1503 says the original and two duplicates of the document required or authorized to be published, which I assume is the rule, shall be filed with the Office of the Federal Register. That seems to suggest the agency, the promulgating agency, is doing the filing. I don't think it does. I think it's a little unclear. I mean, I think we would say with a brief filed in this court, we would say the brief is filed with the court. But again, the thing that a lawyer does is transmit the brief to the court for filing. The clerk's office then decides whether it's going to be accepted for filing. And so when that happens, we would say the brief is filed with the court. You know, it's on file with the court. But I think technically, you know, what the party does is transmit it and what the clerk's office does is accept it for filing. I would just note on all of this, I mean, I think these are interesting questions. I don't – they haven't challenged the rule. And you do have Kennecott saying, you know, OFR has reasonably construed the statute. I would also note – Kennecott is very strong for you, no doubt. I'm just trying to fit it into the text here.  Which, you know, you're saying filed in the first sentence has that very passive connotation without indicating the filer. But upon filing in the middle, it's the OFR, not the agency. I agree. I think it's the last sentence of the provision that does the most work in making clear that the thing the agency does is transmit it for filing. But I would note just parenthetically, the statute changed slightly in January of this year. It's substantively the same, but they've removed some of the references to the copies. So on the case law, I mean, Plaintiff is correct that in humane society, the court formally reserves the question whether a rule could pass the point of no return before public inspection if it's publicly posted by the agency. But everything about the reasoning of humane society makes clear that it can't. I think we may have lost Judge Childs. We may have lost Judge Childs. I'm still here. I can still hear you.  We can't see you. That's all right. Not sure why.  Humane society reserved. The debate in humane society between Judge Tatel and Judge Rao was over the point at which you win this case or a later. Exactly. Yes, that's right. And the reservation, I realize it was a formal reservation, but everything but the logic of humane society suggests that public inspection is not just sufficient but necessary. And that's how the court read humane society in GPA midstream. The court wrote there that, quote, until a rule is filed for public inspection, it, quote, may be withdrawn without explanation or notice and comment and is not valid and enforceable against the public at large. And the court in GPA midstream was not ignorant of the fact that rules could be sometimes posted publicly online because that had happened in that case, just as it happened here and in humane society. And the court clearly noticed that it had happened because the court called for supplemental briefing on whether the petition for review in that case was timely. And it wouldn't have been timely had the clock started running when it was posted online. But but the court held that it was timely. The petition was timely because the clock started running no earlier than public inspection. And I would just one one sort of last point, as a couple of members of the panel noted this morning, bright line rules are really important in this context. We are here talking about the legal effect of a twenty twenty two rule. We're here in twenty twenty five and we sort of can't be having debates, you know, two and three years after a rule has been promulgated by the agency where the validity of the rule would in plaintiffs do turn on whether, you know, somebody outside the agency saw it here. It was posted online on the agency's Web site and there was some conference call, you know, but in other. But they've already sort of recognized maybe maybe the email blast wasn't necessary. You know, in some other cases you'd have. Well, it was on a back page of the Web site. Maybe nobody saw it. Maybe only a few people saw it. Maybe only half the regulated community saw it. It's sort of no way to run a railroad. And I think this court's case law in Kennecott and Humane Society and GP midstream tells you everything you need to know to say that the bright line rule should be the point of public inspection. I'd like to address standing briefly. You don't seem to contest the twenty twenty two rule with respect to standing to challenge that rule. Is that correct? So the district court found and we have not disputed that they have standing to challenge the surety bond provision of the twenty twenty two final rule. We did contest their standing in the district court as to other provisions in the twenty twenty two final rule. The surety bond provision is severable from the others and they've disputed that. And so if the court held against us on the merits, you know, there would be separate questions of what the right remedy would be. And the district court might need to sort out whether they had broader standing to challenge the rule. But we haven't disputed their standing to challenge the surety bond provision of the final rule. Is that OK with respect to the twenty twenty one rule? Are you suggesting that they lack standing to challenge the withdrawal of that rule based on an injury or because the action wasn't final or both? It's based on the injury. So so I actually don't think in this court they are challenging the withdrawal of the twenty twenty one final rule. What they're challenging still is OFR is action or inaction with respect to the twenty twenty one draft rule. And as the district court held, they don't have standing to do that because their members were actually better off because OFR didn't publish the twenty twenty one draft rule. It meant that for that two year period after that, they had lower surety bond requirements rather than higher ones. But standing to challenge the twenty two rule depends on the proposition that some aspects of it are less favor to them. I think that's right. I think I think that the surety bond provision is an example of that. So the surety bond provision is unfavorable to them. Twenty two to be twenty one. Twenty. No, sorry. The surety bond provision is the same in twenty one and twenty two. The surety bond provision of the twenty twenty two rule is less favorable for them than the twenty ten rule. And so the reason they have standing to challenge, we think the twenty twenty two final rule is they were harmed by the change from twenty ten to twenty twenty two. But on their on their theory, the twenty one rule became effective and not withdrawable and wasn't was not properly withdrawn. So isn't I mean, I'll ask your friend. Yes. I would think the relevant comparison is twenty two versus twenty one. I think that's possible. And to be clear, we would not object to ruling in our favor on standing grounds. But that's the basis. The basis on which the district court found standing was twenty two versus versus ten. Judge Childs, anything else? No, thank you. OK, thank you. If I may, I'd like to go back to 44 USC, 15 of three. Can you just while it's fresh in my mind, can you help me with standing? Yes. Your theory, your theory is that the twenty twenty one rule became effective had the past. The force of law can only be withdrawn based on notice and comment. Correct. And that's your that's your theory for saying the twenty two rule is invalid and therefore the twenty one rule is effective, remains effective. I don't know about that. What I'm saying is that since twenty one became final, it's administrative record closed and the agency couldn't use that administrative record to make anything new. Our client has not challenged the withdrawal of the twenty twenty one rule because it prefers twenty ten to twenty twenty one. OK, we don't if you win in this appeal. We go from we set aside the twenty twenty two rule and the twenty twenty one rule is effective. It may be and I think that's a better question for the district court than up here and that they haven't challenged that. Your whole theory here is that it became final. It became final. And then the agency took it down. I think that was unlawful, but we haven't challenged it from our clients perspective. Twenty ten was always the rule that as for them stayed in effect without change. So they never experienced or lived under twenty twenty one. Suppose suppose we shift from the twenty two rule to the twenty one rule. Would your clients have any regulatory benefit? Yes, they would. And I think we made that pretty clear in the district court that our client prefers twenty ten. But twenty twenty one is better than twenty twenty two, but not because of the surety bond provisions. There are other other provisions. I disagree with my friend who thinks that that's the same as between twenty one and twenty two on surety bonds. I think that twenty two surety bonds issue is really, really bad for our client and they would prefer twenty one. OK. OK, sorry. Of course. I'll give you more time. Thank you. You want to. I appreciate it. Going back to 1503, if I might, just looking at the first sentence, this is talking about filing of rules with the OFR. And it says essentially the agency shall file them with OFR, which shall be open for that purpose. Then the archivist shall note on the document the agency filed when it was filed. And here's what's interesting going to the middle. When the original document, when the original rule is issued, prescribed or promulgated outside the district, then the notation shall be the hour of filing of the certified copies. So even the OFR act clearly says the agency is the one that does the issuing, prescribing or promulgating, because otherwise this sentence doesn't make any sense. So agency issues a rule. They have the original and then they file it with OFR. And OFR is then supposed to stamp it and put it on public inspection. All of this contemplates final agency action ahead of the actual public inspection. But there may be a bright line that we can draw here, which is not just agency website, agency press release, but the agency filing for public inspection with OFR. Then we don't give OFR the power to say no, we're not doing it. Agency says, here it is. Here it is, OFR. That's the end of the line. That's the bright line that we can draw. That's what I'd like to do. Okay. Judge Childs, anything further? Nothing further. Thank you. Okay. Thank you, counsel. Case is submitted. And we will take a brief recess to bring out Judge Garcia.
judges: Katsas; Childs; Ginsburg